IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE SHEET METAL WORKERS, et al.,

    Plaintiffs,

  v.

TIMOTHY MOAK and JENNIFER MOAK,

    Defendants.
_____/

No. C 11-4620 CW

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

    Plaintiffs Board of Trustees of the Sheet Metal Workers Local 104 Health Care Trust, Sheet Metal Workers Pension Trust of Northern California, and Sheet Metal Workers Local 104 Vacation Holiday Savings Plan (collectively referred to as the Trust Funds) and Trustee Bruce Word move for entry of default judgment against Defendants Timothy and Jennifer Moak.  The motion is unopposed.  The Court deems the matter suitable for decision without oral argument, and grants the motion in part and denies it in part.

BACKGROUND

    The following summary of factual allegations in this action is taken from the complaint and from section II of the magistrate judge's report and recommendation re: Plaintiffs' motion for default judgment.  (Docket No. 34.)

    Plaintiffs are trustees of employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA) § 3(1) and (3), 29 U.S.C. § 1002(1) and (3) and § 1132(d)(1), and a multiemployer plan within the meaning of ERISA

§§ 3(37) and 515, 29 U.S.C. §§ 1002(37) and 1145.  Compl. ¶ 2. The Trust Funds are authorized to bring suit under ERISA, and Plaintiff Board of Trustees of the Sheet Metal Workers Local 104 Health Care Trust is authorized to bring suit and collect monies for the Sheet Metal Workers' National Pension Fund.  Id.

Pacific Heating & Sheet Metal, Inc. (Pacific), a California corporation, was bound by a written collective bargaining agreement with Sheet Metal Workers Local Union No. 104, which provides that Pacific shall make contributions to the Trust Funds on behalf of Pacific's employees on a regular basis on all hours worked, and that Pacific shall be bound to and abide by all the provisions of the respective Trust Agreements and Declarations of Trust of the Trust Funds.  Id., ¶ 5.  On August 3, 2010, Defendants executed a personal guaranty in the sum of $136,600.57 for the fringe benefits due for the period March 2010 through June 2010, plus "any additional new fringe benefit obligations which become due prior to [Pacific] paying its fringe benefit obligations for the above period . . . ."  Compl., Ex. A.

Plaintiffs allege that Defendants violated ERISA and the National Labor Relations Act of 1947 by failing to pay monies due to the Trust Funds under the collective bargaining agreement, trust agreements, and the personal guaranty on behalf of Pacific's employees.  Id. ¶ 6; Ex. A.  Plaintiffs seek unpaid contributions, liquidated damages, interest and attorneys' fees pursuant to the terms of the collective bargaining agreement.  Id. ¶¶ 8-9.

Pacific ceased operations on or about October 31, 2010.  Id. ¶ 11.  Plaintiffs further allege that Defendants are liable for Pacific's withdrawal liability in the amount of $735,675.00, which

2

1 allegedly represents additional new fringe benefit obligations due
2 and payable under the personal guaranty. Id. ¶ 20; Ex. A.
3        Plaintiffs filed this action on September 16, 2011, seeking
4 an award of all contributions due and owing to the date of
5 judgment, withdrawal liability payments due, liquidated damages,
6 interest, and attorneys' fees and costs.  On September 27, 2011,
7 Defendants were served by personal delivery to Timothy Moak at 236
8 Spring Valley Drive, Vacaville, California 95687.  (Docket Nos. 4,
9 5.)  Defendants failed to respond to the complaint and Plaintiffs
10 requested entry of default, which the clerk of court entered on
11 November 8, 2011.  (Docket No. 9.)
12        On March 21, 2012, Plaintiffs filed the present motion for
13 default judgment.  (Docket No. 14.)  The Court referred the matter
14 to a magistrate judge for a report and recommendation.  Defendants
15 failed to appear and did not otherwise respond to Plaintiffs'
16 motion.  On May 1, 2012, the assigned magistrate judge issued a
17 report and recommendation that the motion for default judgment be
18 denied because Plaintiffs failed to establish that Defendants were
19 "employers" subject to suit under ERISA.  The magistrate judge
20 recommended that the complaint be dismissed with leave to amend to
21 plead additional allegations that would support imposing
22 individual liability on Defendants.  (Docket No. 34.)
23        Plaintiffs timely filed a request for de novo determination
24 of the motion for default judgment and their objections to the
25 magistrate judge's report and recommendation that the motion for
26 default judgment be denied.  (Docket No. 36.)  The Court granted
27 Plaintiffs' request for de novo determination on their motion for
28 default judgment, granted leave to file additional proposed

3

findings, and ordered Plaintiffs to submit a summary of the damages calculation. The Court has reviewed the papers filed by Plaintiffs and the magistrate judge's report and recommendation, and grants the motion for default judgment in part and denies it in part.

## LEGAL STANDARD

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). The district court has discretion in its decision to grant or deny relief upon an application for default judgment. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The court may consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir.

4

1977); Fed. R. Civ. P. 8(d).  "The district court is not required to make detailed findings of fact."  Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  On the other hand, a defendant is not held to admit facts that are not well-plead or to admit conclusions of law.  Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).  As a result, where the allegations in a complaint are not well-plead, liability is not established by virtue of the defendant's default and default judgment should not be entered.  Id.

Damages or other forms of relief awarded are constrained by the rule that judgment by default "must not be different in kind from, or exceed in amount, what is demanded in the [complaint]."  Fed. R. Civ. P. 54(c).

## DISCUSSION

I.  Jurisdiction and Service

Based on the findings of the magistrate judge on jurisdiction and service of process, which were not the subject of Plaintiffs' request for de novo determination, the Court is satisfied that it has subject matter and personal jurisdiction in this matter.  Rept. Rec. at 3-4.

II. Claim for Unpaid Contributions, Liquidated Damages, Interest and Attorneys' Fees

With respect to Plaintiffs' first cause of action for unpaid contributions, the Court finds that the Eitel factors are satisfied, based on the personal guaranty executed by Defendants.  In support of the motion for default judgment, Plaintiffs acknowledge that Pacific, not Defendants, "was the original signatory employer."  Mot. De Novo Determination at 4.  However,

5

default judgment is sought against Defendants, not as employers under ERISA, but as fiduciaries acting "indirectly in the interest of the employer" based on the separately executed guaranty: "Sometime later, Timothy Moak and Jennifer Moak, principals in the business, signed a separate document, a personal guaranty of the fringe benefit contribution obligation." Id. at 4 (citing 29 U.S.C. § 1002(5)). Thus, the key Eitel factors addressing the merits of Plaintiffs' claim, the sufficiency of the complaint, and the possibility of a dispute concerning material facts weigh in favor of default judgment because Plaintiffs have sufficiently shown that Defendants are obliged to guarantee "all fringe benefit contributions of the Company which may become due in the future until such time as the Company pays in full the $136,600.57 obligation." Compl., Ex. A.

Plaintiffs have demonstrated that, pursuant to the terms of the collective bargaining agreement, $163,796.65 in unpaid contributions is now due for hours worked from March 2010 through October 2010, as confirmed in an audit result and offset by credits. Suppl. Finegan Dec. ¶¶ 4-7 (identifying original delinquency of $136,600.57; second delinquency, for August through October 2010, of $97,746.08; and $70,550.00 in credits). Liquidated damages of twenty percent on the delinquent contributions (without the deduction for credits) amount to $46,869.33, for a net balance of unpaid contributions and liquidated damages of $210,665.98 (not the $215,415.27 calculated by Plaintiffs). Id. ¶ 7; Finegan Dec. ¶ 7 and Ex. 9.

Interest is also due and owing on all principal amounts at the legal rate from the dates on which the principal amounts

6

1 accrued.  Finegan Dec. ¶ 10 and Ex. 10.  Plaintiffs apply an
2 interest rate of ten percent to the unpaid contributions in the
3 amount of $163,796.65, due as of February 2, 2011.  Finegan Dec. ¶
4 16 and Exs. 7 and 11; Suppl. Finegan Dec. ¶ 10.  At this interest
5 rate, the daily amount of interest is $44.88.  Suppl. Finegan Dec.
6 ¶ 10.  For the 637 days between February 2, 2011 and October 31,
7 2012, Plaintiffs have shown that the interest due is $28,588.56.

8 Looking to the other Eitel factors, the Court determines that
9 Plaintiffs will be left without a remedy if default judgment is
10 not entered, and there is no evidence in the record to suggest
11 that Defendants' failure to appear and otherwise defend was the
12 result of excusable neglect.  Although there is a large sum of
13 money at stake in the claim for unpaid contributions, and a strong
14 policy underlying the Federal Rules of Civil Procedure favors a
15 decision on the merits, on balance, the Eitel factors weigh in
16 favor of granting default judgment on the claim for unpaid
17 contributions, liquidated damages and interest in the amount of
18 $239,254.54.

19 Plaintiffs also seek an award of attorneys' fees and costs,
20 which may be awarded to a trust fund that receives a judgment in
21 its favor.  See 29 U.S.C. § 1132(g)(2)(D).  Plaintiffs have
22 submitted declarations by their attorney to support their claim
23 for attorneys' fees and costs.  Plaintiffs' counsel calculates
24 that he spent in excess of six hours prosecuting this action at a
25 rate of $185.00 per hour, for a total fee request of $1,110.00 for
26 six hours.  Carroll Suppl. Dec. ¶ 4.  The amount of time expended
27 and the hourly billing rate are reasonable given the work
28 performed.  Plaintiffs calculate their costs for prosecuting this

7

action to be $472.00, consisting of filing fees and costs for service of summons.  Carroll Dec. ¶ 2.  Thus, Plaintiffs have shown that they are entitled to an award of attorneys' fees and costs totaling $1,582.00.

III. Claim for Withdrawal Liability

With respect to Plaintiffs' second cause of action, seeking an award of $735,675.00 against Defendants for Pacific's withdrawal liability, Plaintiffs fail to demonstrate the merit of that claim or the sufficiency of the complaint, based on the personal guaranty.  The guaranty executed by Defendants on August 3, 2010, expressly states,

> Guarantors want to provide the Trust Funds with assurances that all contributions due to the Trust Funds arising under any collective bargaining agreement, any trust or other agreement, or otherwise for the above periods through the date of execution hereof will be paid; that Guarantors want to guarantee that any payment plan entered into by the Company will be carried out; and the Guarantors want to guarantee that any additional new fringe benefit obligations which become due prior to the Company paying its fringe benefit obligations for the above period are also paid.

Compl., Ex. A at 1-2.  Nowhere in the guaranty do Defendants agree to be personally obligated for Pacific's withdrawal liability, which was not triggered until October 31, 2010, when Pacific ceased operations and ceased to have an obligation to contribute to the employee benefit plans, nearly three months after Defendants executed the personal guaranty.  Compl. ¶ 11.

Plaintiffs contend that Defendants' agreement to guarantee personally the fringe benefit contributions owed by Pacific encompasses the withdrawal liability.  However, the guaranty cannot be so broadly construed.  Under California law, guaranty

8

contracts are subject to the same rules of interpretation as those used for other contracts, with a view to ascertaining the intent of the parties. River Bank Am. v. Diller, 38 Cal. App. 4th 1400, 1415 (1995) (citing Bloom v. Bender, 48 Cal. 2d 793, 803 (1957)). "Guaranty contracts 'may be explained by reference to the circumstances under which they were made and the matter to which they relate, the main object being to ascertain and effectuate the intention of the parties.'" Id. (quoting Bank of America Nat. Trust and Savings Assn. v. Waters, 209 Cal. App. 2d 635, 638 (1962)).  Here, the provisions of the guaranty agreement refer only to obligations for fringe benefit contributions, not to other statutory obligations such as withdrawal liability.  Referring to the circumstances under which the guaranty was executed, Defendants acknowledged that as of the date of the guaranty agreement, Pacific "presently owes a balance in contributions to the Trust Funds, in the sum of $136,600.57 for March 2010 through June 2010."  Compl., Ex. A at 1.  In that context, Defendants agreed "to personally guarantee payment of the $136,600.57 in fringe benefit obligations due to the Trust Funds from the Company for the above periods," and also agreed to guarantee "all fringe benefit contributions of the Company which may become due in the future until such time as the Company pays in full the $136,600.57 obligation."  Id.  The guaranty also provided that "if all fringe benefit obligations of the Company . . . are paid, and the Company is no longer a delinquent employer under the rules of the collective bargaining agreement, this personal guarantee shall be rendered ineffective and unenforceable and shall be deemed canceled."  Id. at 2-3.  Under these circumstances, where Pacific

9

was still operating as a business at the time the guaranty was executed, there is no indication that the parties contemplated that Defendants would be personally obligated for the business's withdrawal liability in the future.

An employer's withdrawal liability pursuant to 29 U.S.C. § 1381 is determined separately from the calculation of fringe benefit contributions under a collective bargaining agreement. As the Ninth Circuit recognized in Woodward Sand Co., Inc. v. W. Conference of Teamsters Pension Trust Fund, 789 F.2d 691, 694 (9th Cir. 1986), the system for assessing withdrawal liability was established to prevent employers from withdrawing from pension plans without paying their share of the plans' unfunded vested benefit liability. "This system is designed to make employers pay their share of the real cost of pensions, by paying a share of the difference between the assets already contributed and the vested benefit liability." Id. (citing Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 723 (1984)). "This 'withdrawal liability' is assessed against the employer to 'ensure that employees and their beneficiaries [are not] deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.'" Id. (quoting R.A. Gray & Co., 467 U.S. at 723). As Plaintiffs acknowledge, the imposition of withdrawal liability lies within "the full discretionary authority" of the trustees and requires an assessment of the employer's share of the unfunded vested liability for all participating employers. Finegan Dec. ¶ 5, Ex. 2 at 2, ¶ I.E and Ex. 5; Kaufmann Dec. ¶ 3. The personal guaranty does not mention or contemplate an assessment of

10

Pacific's share of the unfunded vested benefit liability for all employers.  Under the circumstances presented here, Defendants' agreement to guarantee Pacific's fringe benefit contributions does not create future withdrawal liability.

Because the personal guaranty does not oblige Defendants to pay Pacific's withdrawal liability, the complaint fails to allege a sufficient claim for withdrawal liability against Defendants and the motion for default judgment is denied.  Plaintiffs seek leave to amend the complaint to support individual liability against Defendants.  Mot. De Novo Determination at 9.  Because it does not appear futile for Plaintiffs to allege that the employer, Pacific, was subject to withdrawal liability, and allege a basis for joint and several liability against Defendants, leave to amend the complaint is granted.  See Board of Trustees of the Western Conf. of Teamsters Pension Trust Fund v. Lafrenz, 837 F.2d 892, 893 n.1 (9th Cir. 1988) (affirming judgment imputing ERISA withdrawal liability to owners under common control doctrine and noting that the employer's withdrawal liability was determined an earlier action).  However, the Court takes judicial notice of the fact that Pacific has filed a Chapter 7 voluntary petition for bankruptcy and that a trustee has been appointed.  In re Pacific Heating & Sheet Metal, Inc., Case. No. 11-40315 (Bankr. N.D. Cal., petition filed January 11, 2011).  Because any action for withdrawal liability against Pacific is likely to be subject to the automatic stay, Plaintiffs would have to seek appropriate relief against Pacific in the bankruptcy proceedings.

Plaintiffs may either voluntarily dismiss the second cause of action for withdrawal liability from the complaint, or amend the

11

claim for withdrawal liability if they can do so without violating the automatic bankruptcy stay. Should Plaintiffs elect to dismiss the claim for withdrawal liability, the Court will enter judgment against Defendants on the first cause of action for unpaid contributions, liquidated damages, interest and attorneys' fees in the amount of $240,836.54. Plaintiffs must advise the Court of their election within seven days of the date of this order.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is GRANTED as to the first cause of action for unpaid contributions, liquidated damages, interest and attorneys' fees in the amount of $240,836.54. Plaintiffs' motion for default judgment is DENIED WITHOUT PREJUDICE as to the second cause of action for withdrawal liability in the amount of $735,675.00.

If Plaintiffs elect to dismiss the claim for withdrawal liability from the complaint, they shall advise the Court and submit a proposed judgment within seven days from the date of this order. If they intend to file an amended complaint or a motion for relief from the bankruptcy stay, or both, they must do so in seven days. If they do neither, the second claim will be dismissed for failure to prosecute and judgment will enter on the first claim.

IT IS SO ORDERED.

Dated: 10/31/2012

CLAUDIA WILKEN
United States District Judge

12